JPL/MRG
F. #2019R01460

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JAVIER AGUILAR,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 20-CR-390 (S-1) (ENV)

## THE GOVERNMENT'S REQUESTS TO CHARGE

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Jonathan P. Lax
Matthew R. Galeotti
Assistant United States Attorneys

Derek J. Ettinger
Assistant Chief, Fraud Section
Clayton P. Solomon
Trial Attorney, Fraud Section
    (Of Counsel)

D. Hunter Smith
Trial Attorney, Money Laundering and Asset Recovery Section
    (Of Counsel)

## PRELIMINARY STATEMENT

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the government respectfully requests that the Court include the following instructions in its charge to the jury. The government also requests leave to offer additional instructions as may become appropriate during the course of the trial.

REQUEST NO. 1
(General Requests)

The government requests that the Court charge the jury in its usual manner on the following subjects:

a.  Function of the Court and the Jury;

b.  Jury Communications with Lawyers and the Court;

c.  Equality of the Parties Before the Court;

d.  Presumption of Innocence;

e.  Burden of Proof and Reasonable Doubt;

f.  Direct and Circumstantial Evidence;

g.  Function of the Indictment and What Is Not Evidence;

h.  The Meaning of "and" in the Indictment;

i.  Dates and Amounts Approximate;

j.  Permissible Inferences Drawn from the Evidence;

k.  Stipulations;

l.  Objections;

m.  Defendant's Right Not to Testify (if applicable);

n.  Credibility of Witnesses and Discrepancies in Testimony;

o.  Testimony of Law Enforcement or Government Witnesses;

p.  No Consideration of Punishment;

q.  No Basing Verdict on Sympathy, or Race, Religion, National Original, Sex or Age, or Nature of the Crime;

r.  Deliberations;

s.  Right to See Exhibits and Have Testimony Read During Deliberations; and

t.  Unanimity.

2

<u>REQUEST NO. 2</u>
(Knowingly, Willfully, Intentionally)

During these instructions you will hear me use the terms "knowingly," "willfully," and "intentionally."   I will therefore define these terms.

A.    <u>Knowingly</u>

Certain allegations in the Indictment require that, in order to sustain its burden of proof, the government prove that a defendant acted "knowingly."   A defendant acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness.   Whether the defendant acted knowingly may be proven by his conduct and by all of the facts and circumstances surrounding the case.

B.    <u>Willfully</u>

Certain allegations in the Indictment require that, in order to sustain its burden of proof, the government prove that a defendant acted "willfully."    " Willfully" means to act voluntarily, knowingly and purposefully, with an intent to do something the law forbids; that is to say, with a bad purpose either to disobey or to disregard the law.   The government need not prove that the defendant was aware of the specific law or rule that his conduct may be violating, but must prove that the defendant acted with knowledge that his conduct was, in a general sense, unlawful. The defendant's conduct is not "willful" if it was due to negligence, inadvertence, or mistake.

C.    <u>Intentionally</u>

Certain allegations in the Indictment require that the government must prove that a defendant acted "intentionally."   "Intentionally" means to act deliberately and purposefully.   That is, the defendant's acts must have been the product of his conscious objective, rather than the product of a mistake or accident.

3

Whether a person acted knowingly, willfully, or intentionally is a question of fact for you to determine, like any other fact question. Direct proof of knowledge and criminal intent is almost never available. It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with criminal intent. Such direct proof is not required. The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom. In either case, the essential elements of the crime charged must be established beyond a reasonable doubt.

Authority

Adapted from the jury charge of the Hon. Margot K. Brodie in United States v. Ng, 18-CR-538 (E.D.N.Y. 2022) (hereinafter "Ng"), attached hereto as Exhibit A; the jury charges of the Hon. Kiyo A. Matsumoto, United States v. Shkreli, 15-CR-637 (E.D.N.Y. 2017) (hereinafter "Shkreli"), attached hereto as Exhibit B, and United States v. Rivera, et al., 13-CR-149 (E.D.N.Y. 2015) (hereinafter "Rivera"); the jury charge of the Hon. Vernon S. Broderick in United States v. Ng Lap Seng, 15-CR-706 (S.D.N.Y. 2017) (hereinafter, "Lap Seng"), attached hereto as Exhibit C; the jury charge of the Hon. Loretta A. Preska in United States v. Chi Ping Patrick Ho, 17-CR-779 (S.D.N.Y. 2018) (hereinafter "Ho"), attached hereto as Exhibit D; and the jury charge of the Hon. Dora L. Irizarry in United States v. Lange, et al., 10-CR-968 (E.D.N.Y. 2014) (hereinafter "Lange").

4

REQUEST NO. 3
(Conspiracy Generally)

The defendant Javier Aguilar is formally charged in an Indictment. The Indictment in this case contains three counts: (1) conspiracy to violate the Foreign Corrupt Practices Act, or FCPA, through bribery; (2) actually violating the FCPA through bribery; and (3) conspiracy to commit money laundering.[1] As I instructed you at the outset of this case, the Indictment is a charge or accusation. I will first instruct you on conspiracies in general.

A conspiracy is a kind of criminal partnership. It consists of an agreement or understanding of two or more persons to accomplish some unlawful purpose. A conspiracy to commit a crime is an entirely separate and different offense from the underlying crime that the conspirators intended to commit, which the law refers to as a "substantive crime." A conspiracy is in and of itself a crime. Indeed, if a conspiracy exists, it is still punishable as a crime, even if it should fail to achieve its purpose or even if it was impossible for the conspirators to carry out their plan successfully. In other words, you may find the defendant guilty of the crime of conspiracy even though the substantive crime that was the object of the conspiracy was not actually committed.

The United States Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime. This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.

Authority

Adapted from Ng, Ho; Shkreli; Rivera; Sand, et al., Modern Federal Jury Instructions ("Sand"), Instruction 19-2.

---

[1] In light of the dismissal of Counts Two and Four of the Superseding Indictment on venue grounds, see ECF Dkt. No. 154, the government respectfully requests that Counts Three and Five be referred to as Counts Two and Three, respectively, in the presence of the jury.

5

REQUEST NO. 4
(Count One: Conspiracy to Violate the FCPA)

Count One of the Indictment charges the defendant Javier Aguilar with conspiracy to violate the FCPA through bribery as follows:

In or about and between March 2015 and July 10, 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JAVIER AGUILAR, together with others, did knowingly and willfully conspire to commit one or more offenses against the United States, to wit:

(a) being a domestic concern and an employee of a domestic concern, to make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay and authorization of the payment of any money, offer, gift, promise to give and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all or a portion of such money and thing of value would be and had been offered, given and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist AGUILAR, Vitol and others in obtaining and retaining business for and with, and directing business to, Vitol and others, contrary to Title 15, United States Code, Section 78dd-2; and

(b) while in the territory of the United States, corruptly to make use of the mails and means and instrumentalities of interstate commerce and to do any act in furtherance of an offer, payment, promise to pay and authorization of the payment of any money, offer, gift, promise to give and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all or a portion of such money and thing of value would be and had been offered, given and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her

6

or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Enrique Pere Ycaza and others in obtaining and retaining business for and with, and directing business to Vitol and others, contrary to Title 15, United States Code, Section 78dd-3.

In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant JAVIER AGUILAR, together with others, committed and caused the commission of, among others, the following:

<u>OVERT ACTS</u>

(a) On or about April 15, 2015, at AGUILAR's direction, Lionel Hanst executed a sham brokerage agreement with a Vitol Group company on behalf of Zanza Oil.

(b) On or about December 27, 2016, AGUILAR forwarded an email to Antonio Pere Ycaza that was originally sent by legal representatives working at the direction of Vitol in New York, New York, through the Eastern District of New York to executives at Vitol and others requesting that they notify AGUILAR that Petroecuador would contact him to confirm that Petroecuador would recognize Vitol as [Oman Trading International's] agent for purposes of the Fuel Oil Contract.

(c) On or about January 3, 2018, Enrique Pere Ycaza sent an email to Lionel Hanst attaching draft Sham Consulting Services Agreements between Lion Oil and OPV and between Zanza Oil and OPV and asking Hanst, in sum and substance, to sign and return the contracts as soon as possible so that he could send them to the bank and open an account.

(d) On or about March 7, 2018, Enrique Pere Ycaza sent an email to Lionel Hanst attaching 39 Sham Consulting Services Invoices from OPV to Lion Oil.  The 39 invoices covered the period between approximately January 2017 and January 2018.

(e) On or about March 7, 2018, Enrique Pere Ycaza sent an email to Lionel Hanst attaching 39 sham invoices from OPV to Zanza Oil.

The 39 invoices covered the period between approximately January 2017 and January 2018.

(f) On or about March 7, 2018, Lionel Hanst forwarded to AGUILAR at the First Aguilar 007 Account and to Co-Conspirator #1, via an alias and non-business email account, an email that Hanst received from Enrique Pere Ycaza, attaching 39 sham invoices from OPV to Zanza Oil.  The 39 invoices covered the period between approximately January 2017 and January 2018, and included 13 invoices with invoice numbers 10021-24, 10028-30, 10032, 10036-38 and 10043-44.  In the email, which was written in Spanish, Hanst told AGUILAR, in sum and substance, that he had received the attached invoices for purported consulting services from "los Equatorenos," a reference to Antonio Pere Ycaza and Enrique Pere Ycaza, and asked AGUILAR how he should proceed.

(g) On or about April 20, 2018, Vitol S.A. wired approximately $750,000 from a bank account located in the United Kingdom to a bank account located in Curaçao in the name of Zanza Oil.

(h) On or about May 18, 2018, Lionel Hanst sent an email (the "Hanst May 18 Email") to AGUILAR at the First Aguilar 007 Account attaching a spreadsheet and stating in Spanish, in part, "I received quite a few invoices from Ecuador, basically, the invoices up until October 2017.  The total is 1,434K, 510K was already paid, so it is still necessary to pay 924K . . . .  And give me the OK if everything is correct so I can start making the payments in batches."

(i)  On or about May 18, 2018, AGUILAR, via the First Aguilar 007 Account, sent an email to Lionel Hanst in response to the Hanst May 18 Email.  AGUILAR stated, in Spanish, and in part, "That's correct... move ahead[.] But make payments for no more than 150k .... and do them every 15 days..... they need to be patient...."

(j)  On or about and between May 28, 2018 and June 25, 2018, both dates being approximate and inclusive, Zanza Oil wired three payments totaling approximately €201,306 and one payment totaling approximately $19,283 to bank accounts for OPV located in the Cayman Islands and Curaçao.  OPV's bank statements showing these wires referenced the same 13 invoices, including invoices with number 10021-24, 10028-30, 10032, 10036-38 and 10043-44, as referenced in sub-paragraph (f) above.[2]

---

[2]    The government respectfully requests that the Court omit Overt Act K alleged in Paragraph 49(k) of the Superseding Indictment.  As the government disclosed to the defendant before trial, the government does not intend to prove or rely on that overt act.

To prove the crime of conspiracy to violate the FCPA as charged in Count One, the government must prove beyond a reasonable doubt the following three elements:

First, that two or more persons entered into an agreement to violate the FCPA, a crime that I will define later;

Second, that the defendant knowingly and willfully became a member of the conspiracy; and

Third, that any one of the conspirators—that is, the defendant or any other member of the conspiracy—knowingly committed at least one overt act during the life of the conspiracy.

I will now further explain each element.

A.      First Element: Existence of the Conspiracy

The first element the government must prove beyond a reasonable doubt is that two or more persons entered into the charged agreement to violate the FCPA.   One person cannot commit a conspiracy alone.  Rather, the proof must convince you that at least two persons joined together in a common criminal scheme.

The government need not prove that members of the conspiracy met together or entered into any express or formal agreement.  Similarly, you need not find that the alleged conspirators stated, in words or in writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object was to be accomplished.  What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may of course find that the existence of an agreement between two or more persons to accomplish the unlawful object has been established by direct proof.   However, since conspiracy is, by its very nature, characterized by secrecy, direct proof may not be available.  The government is not required to prove that the conspirators sat around a table and entered into a

9

solemn contract, orally or in writing, stating that they have formed a conspiracy to violate the law, setting forth details of the plans, the means by which the unlawful project is to be carried out or the part to be played by each conspirator. A conspiracy, by its very nature, is almost invariably secret in both origin and execution. Therefore, you may infer the existence of a conspiracy from the circumstances of this case and the conduct of those involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed, consider the actions and statements of all of those you find to be participants in the conspiracy as proof that a common design existed on the part of the person charged to act together to accomplish the unlawful purpose stated in the Indictment.

So, you must first determine whether or not the evidence established beyond a reasonable doubt the existence of the conspiracy charged in Count One. In considering this first element, you should consider all the evidence that has been admitted with respect to the conduct and statements of each alleged co-conspirator, and any inferences that may reasonably be drawn from them. It is sufficient to establish the existence of the conspiracy, as I have already said, if, from the proof of all the relevant facts and circumstances, you find beyond a reasonable doubt that the minds of at least two alleged co-conspirators met in an understanding way to accomplish, by the means alleged, at least one object of the conspiracy.

B.      Second Element: Membership in the Conspiracy

The second element the government must prove beyond a reasonable doubt is that the defendant knowingly and willfully became a member in the charged conspiracy.

I have already defined the terms "knowingly" and "willfully" and you should apply those definitions here. In deciding whether the defendant was in fact a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy. Did he

10

participate in it with knowledge of its unlawful purpose or purposes and with the specific intention of furthering its unlawful business or objective?

These issues of knowledge and willfulness require you to make determinations about the defendant's state of mind, something that rarely can be proved directly.   However, you have before you the evidence of certain acts, conversations, and statements alleged to involve the defendant and others.  The government contends that these acts, conversations, and statements show, beyond a reasonable doubt, the defendant's knowledge of the unlawful purpose of the conspiracy.

Knowledge and willfulness may be inferred from a secretive or irregular manner in which activities are carried out.  Whether a defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

In order for a defendant to be deemed a member of a conspiracy, he need not have had a stake in the venture or its outcome.  While proof of a financial or other interest in the outcome of a scheme is not essential, if you find that a defendant did have such an interest, it is a factor you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the Indictment.

A defendant's participation in the conspiracy may be established by evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.

A defendant's knowledge may be inferred from the facts you find proved.  In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities.   Moreover, the defendant need not have been fully informed as to all of the details of the conspiracy in order to justify an inference of knowledge on his part, and need not have

11

known the full extent or scope of the conspiracy. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent or duration of a defendant's participation has no bearing on the issue of a defendant's guilt. A defendant need not have joined the conspiracy at the outset as he need not have been a member of the conspiracy for the entire time of its existence. He may have joined it at any time—at the beginning, in the middle, or at the end. A conspirator's liability is not measured by the extent or duration of his participation. Each member of a conspiracy may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor roles. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw a defendant within the scope of the conspiracy. The key inquiry is whether a defendant joined the conspiracy charged with an awareness of at least some of the basic aims and purposes of the unlawful agreement and with the intent to help it succeed.

A conspiracy, once formed, is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members. So, too, once a person is found to be a member of a conspiracy, he or she is presumed to continue membership in the venture until its termination, unless it is shown by some affirmative proof that the person withdrew and disassociated from the conspiracy.

I want to caution you, however, that the defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy. A person may know, or be friendly with, a criminal without being a criminal himself. Similarly, mere association with people who were guilty of wrongdoing does not make the defendant a member of the conspiracy.

In other words, knowledge of a conspiracy, without agreement to participate in it, is not sufficient. Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member.

More is required under the law. What is required is that the defendant participated in the conspiracy with knowledge of at least some of its unlawful purposes or objectives, and with an intent to aid in the accomplishment of its unlawful objectives.

In sum, a defendant, with an understanding of the unlawful nature of the conspiracy, must have intentionally engaged, advised, or assisted in the conspiracy for the purpose of furthering an illegal undertaking. That defendant thereby becomes a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.

C.      Third Element: Overt Act

The third element is the requirement of an overt act. To sustain its burden of proof with respect to the conspiracy charged in Count One of the Indictment, the government must prove beyond a reasonable doubt that at least one overt act was committed in furtherance of the conspiracy by at least one of the coconspirators—either the defendant or any other member of the conspiracy. The defendant need not be the person who committed the act.

As noted previously, Count One of the Indictment contains a section that describes certain alleged "overt acts." The government does not need to prove any of these specific overt acts alleged in the Indictment and that I just listed. You may find an overt act that is not listed above that was committed in furtherance of the conspiracies. Ultimately, the only requirement is that one of the members of the conspiracy, again, not necessarily the defendant, has taken some step or action in furtherance of the conspiracy during the life of that conspiracy.

In other words, the overt act element is a requirement that the agreement went beyond the mere talking stage, the mere agreement stage. The requirement of an overt act is a requirement that some action be taken during the life of the conspiracy by one of the co-conspirators in order to further that conspiracy.

You need not reach unanimous agreement on whether a particular overt act was committed in furtherance of the conspiracy; you just need to all agree that at least one overt act was so committed as to the conspiracy charged in Count One.

You should also bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act loses its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act that in and of itself is criminal or constitutes an objective of the conspiracy.

Authority

Adapted from Ng, Ho, and Lap Seng; the jury charge of the Hon. Pamela K. Chen in United States v. Juan Angel Napout, et al., 15-CR-252 (E.D.N.Y. 2017) (hereinafter "Napout"), attached hereto as Exhibit E; the jury charge of the Hon. Janet Bond Arterton in United States v. Lawrence Hoskins, 12-CR-238 (D. Conn. 2019) (hereinafter, "Hoskins"), attached hereto as Exhibit F; see United States v. Kozeny, 667 F.3d 122, 131-32 (2d Cir. 2011); see also Shkreli and Rivera; Sand, Instructions 6-3, 6-4, 19-2, 19-3, 19-4, 19-6, 19-7, 19-10.1.

14

REQUEST NO. 5
(Count One: Object of the Conspiracy—Violating the FCPA)

I will now explain what constitute violations of the FCPA, which are alleged to be the objects of the conspiracy charged in Count One of the Indictment. The objects of a conspiracy are the illegal goal or goals the co-conspirators agree or hope to achieve.

I also remind you that Count One does not charge the defendant with actually violating the FCPA, but instead with conspiring to violate it. I therefore describe for you the elements of an FCPA violation, so you can understand what the government must prove was an object or objective of the conspiracy charged in Count One.[3]

The FCPA makes it a crime for certain individuals to offer to pay, pay, promise to pay, or authorize the payment of money or anything of value to a foreign official for one or more specified business purposes, which I will explain. The conspiracy charged in Count One is charged as having two objects. In other words, it alleges that the conspirators' goal was to violate the FCPA in two different ways. These are: (1) violating the FCPA as a domestic concern or an employee of a domestic concern (the "Domestic Concern Prong"); and (2) violating the FCPA while in the territory of the United States (the "Territorial Prong").[4]

Keep in mind, you need not find that the conspirators agreed to accomplish both of these objects or goals. Instead, an agreement to accomplish either one of the two objects is sufficient. However, you must all agree on the specific object or objects the conspirators agreed to try to accomplish, and you may find that they agreed to try to accomplish more than one. If you find that two or more persons agreed to accomplish either of the two objects charged in Count

---

[3]    See The jury charge of the Hon. Carol Bagley Amon in United States v. Nemorin, 03-CR-366 (E.D.N.Y. 2003).

[4]    See United States v. Ho, 984 F.3d 191, 212-13 (2d Cir. 2020); United States v. Hoskins, 902 F.3d 69, 91 96-97 (2d Cir. 2018).

15

One, the illegal purpose element will be satisfied, regardless of whether or nor that object was in fact accomplished—that is, regardless of whether that goal succeeded.

      A.      <u>Object #1: Domestic Concern Prong – Elements and Definitions</u>

The elements of a violation of the FCPA under the Domestic Concern Prong are:

<u>First</u>, at relevant times, an individual was a "domestic concern," or an employee of a domestic concern;

<u>Second</u>, the individual acted corruptly and willfully;

<u>Third</u>, the individual made use of the mails or any means or instrumentality of interstate commerce, such as email, telephone calls, or text or electronic messages, in furtherance of the offense, or such use of the mails or any means or instrumentality of interstate commerce in furtherance of the offense was reasonably foreseeable to the individual;

<u>Fourth</u>, the individual offered, paid, promised to pay, or authorized the payment of money or a gift or of anything of value;

<u>Fifth</u>, the offer, promise to pay, or authorization of the payment of money or a gift or anything of value was either: (a) to a foreign official; or (b) to any other person or entity while the individual or any member of the alleged conspiracy knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official;

<u>Sixth</u>, the payment offered, given, promised or authorized was intended for any one of four purposes: (a) to influence any act or decision of a foreign official in his official capacity; (b) to induce—which means to entice or persuade—such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; (c) to secure any improper advantage; or (d) to induce such a foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities; and

16

Seventh, the payment was made to assist the domestic concern in obtaining or retaining business for or with, or directing business to, any person or company.

### 1. First Element – Domestic Concern Association

The first element is that an individual was either a domestic concern or an employee of a domestic concern.  A "domestic concern" is defined to include any individual who is a citizen, national, or resident of the United States; and any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship which has its principal place of business in the United States, or which is organized under the laws of a State of the United States or a territory, possession, or commonwealth of the United States.[5]  The term "employee" has its ordinary meaning.

The indictment alleges that the defendant was both a domestic concern himself and that he was an employee of Vitol, Inc., which the indictment alleges was a domestic concern. Whether the defendant is a domestic concern or an employee of a domestic concern are factual questions for you to resolve.  In order to find that this requirement has been satisfied, you must agree unanimously on how it is satisfied; that is, you must agree unanimously on the identity of the domestic concern.  If you find either that the defendant was a domestic concern or that he was an employee of a domestic concern, this element is satisfied.

### 2. Second Element – "Corruptly" and "Willfully"

The second element is that the individual acted corruptly and willfully.

An act is corruptly done if it is done voluntarily and intentionally and with a bad purpose or evil motive of accomplishing either an unlawful end or result, or a lawful end or result but by some unlawful method or means.   The term "corruptly" in the FCPA means that the offer,

---

[5]    15 U.S.C. § 78dd-2(h)(1).

payment, or promise was intended to induce a person who is a foreign official to misuse his or her official position or to influence the foreign official's action in the defendant's favor.[6]

I have already defined the term "willfully," and you should apply that definition here. I add only that the individual need not have been aware of the specific provision of the law that he is charged with violating, or any other specific provision.[7]

### 3.    Third Element – Use of Mails or Instrumentality of Interstate Commerce

The third element is that the individual made use of the mails or any other means or instrumentality of interstate commerce, such as email, in furtherance of the offer, payment, promise to pay, or authorization of payment, or such use of the mails or any means or instrumentality of interstate commerce in furtherance of the offer, payment, promise to pay, or authorization of payment was reasonably foreseeable to the individual.

The term "interstate commerce" means trade, commerce, transportation, or communication among the several states, or between any foreign country and any state, or between any state and any place outside thereof. The term also includes the use of telephones or other means of intrastate communication, such as email, text messages, electronic messenger applications or faxes.[8] I instruct you that, as a matter of law, sending a wire transfer to or through a U.S. bank constitutes the use of a means or instrumentality of interstate commerce. I also instruct you that, as a matter of law, sending an email to, from, or within the United States constitutes the use of a means or instrumentality of interstate commerce.

---

[6]    The jury charge of the Hon. Theodore D. Chuang in United States v. Mark Lambert, 18-CR-12 (D. Md. 2019) (hereinafter, "Lambert"), attached as Exhibit G.

[7]    See Kozeny, 667 F.3d at 136.

[8]    See 15 U.S.C. § 78c(a)(17).

It is not necessary for the individual to be directly or personally involved in the wire or email, as long as the wire or email was reasonably foreseeable in the execution of the alleged bribery scheme.    A wire or email may be reasonably foreseeable where, among other circumstances, the use of a wire or email would occur in the ordinary course of business.

4.    Fourth Element – Offer, Promise or Payment of Anything of Value

The fourth element is that the individual offered, paid, promised to pay, or authorized the payment of money or a gift or anything of value.    A "thing of value" can take any form, whether cash, check, wire transfer, gifts, donations, contributions, or anything else.    It is not required that the individual provide or offer the thing of value himself.    Rather, an individual who engages in bribery of a foreign official indirectly, through any other person or entity, is liable under the FCPA just as if the individual himself had engaged in the bribery directly.    Thus, if the individual authorized another person to pay a bribe, that authorization alone is sufficient for you to find that this element has been proved.

Furthermore, it is not necessary that the payment actually take place.    Instead, it is the offer or the authorization that completes the crime.    This element is satisfied if you find that the individual offered, promised or authorized an unlawful payment, even if you believe that the payment was not actually made.  It is sufficient simply if the individual believed that a bribe would be offered or paid or that he promised or authorized the offer or payment.

5.    Fifth Element – Foreign Official

The fifth element is that the offer to pay, payment, promise to pay, or authorization of payment was either to a foreign official, or to any other person or entity, while the individual knew that all or a portion of the payment or gift would be offered, given, or promised, directly or indirectly, to a foreign official.  I have already defined the term "knowingly," and you are instructed to apply that definition here.  I also add that for purposes of the FCPA, a person's state

19

of mind is also knowing with respect to conduct, a circumstance, or result if: (a) such a person is aware that such person is engaging in such conduct, that such circumstance exists, or that such result is substantially certain to occur; or (b) such person has a firm belief that such circumstance exists or such result is substantially certain to occur.  A person is deemed to have knowledge of a circumstance if the evidence shows that he or she was aware of a high probability of the existence of such circumstance, unless he or she actually believes that such circumstance does not exist.[9]

The term "foreign official" means any officer or employee of a foreign government, or of any department, agency, or instrumentality of a foreign government.  The term also includes any person acting in an official capacity for or on behalf of a foreign government or department, agency or instrumentality thereof, even if that person him or herself is not an officer or employee of a foreign government or department, agency or instrumentality thereof.[10]

The government contends that (a) the Ministry of Hydrocarbons was a department or agency of the government of Ecuador, and (b) that Petroecuador was an instrumentality of the government of Ecuador.  Thus, to determine whether certain individuals were "foreign officials," you may need to determine whether the Ministry of Hydrocarbons or Petroecuador was a department, agency or instrumentality of the government of Ecuador.

The terms "department" and "agency" of a foreign government have their ordinary meanings.

An "instrumentality" of a foreign government is an entity controlled by the government of a foreign country that performs a function the government treats as its own.  State-owned or state-controlled companies may meet this definition.  To decide if Petroecuador was an

---

[9]     15 U.S.C. § 78dd-2(h)(3).

[10]    15 U.S.C. § 78dd-2(h)(2)(A).

instrumentality of the Ecuadorian government, you may consider the following factors for the relevant time period: (1) the Ecuadorian government's formal designation of Petroecuador; (2) whether the Ecuadorian government had a majority ownership interest in Petroecuador; (3) the extent to which Petroecuador was created for the financial benefit of the nation or for the purpose of earning profits to fund the nation's government; (4) whether any of the entity's profits went to the Ecuadorian government or the Ecuadorian government provided financial support to the entity; (5) whether the Ecuadorian government had the ability to appoint or remove members of the board or the ability to hire and fire senior management; (6) whether Petroecuador had a monopoly over the function it existed to carry out; (7) whether the entity provided a service to the public at large, including by managing public assets; or (8) whether the public and the Ecuadorian government generally perceived Petroecuador to be performing a government function.

These factors are not exclusive, and no single factor will determine whether Petroecuador was an instrumentality of the Ecuadorian government. In addition, you do not need to find all the factors listed above weigh in favor of Petroecuador being an instrumentality in order to find that it was an instrumentality.[11]

If you find that the Ministry of Hydrocarbons was a department or agency of the government of Ecuador, then you must find that any officer or employee of the Ministry of Hydrocarbons, or anyone acting in an official capacity for or on behalf of the Ministry of Hydrocarbons, even if not an officer or employee, was a "foreign official" under the FCPA.

---

[11]    See United States v. Esquenazi, 752 F.3d 912, 925-28 (11th Cir. 2014); the jury charge of the Hon. Jose E. Martinez in United States v. Joel Esquenazi, 09-CR-21010, ECF No. 520 at 23-25 (S.D. Fla. 2011); Lambert; see also Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173, 1192 (10th Cir. 2010) (the fact that Indian casino was "created for the financial benefit of the Tribe" and "promote[d] and fund[ed] the Tribe's self-determination through revenue generation" "weigh[ed] strongly" in favor of sovereign immunity).

Likewise, if you find that Petroecuador was an instrumentality of the government of Ecuador, then you must find that any officer or employee of Petroecuador, or anyone acting in an official capacity for or on behalf of Petroecuador, even if not an officer or employee, was a "foreign official" under the FCPA.

6.  Sixth Element – Offer, Promise, Payment or Authorization Intended for One of the Charged Purposes

The sixth element is that the offer, promise, payment or authorization was intended for any one of four purposes: (a) to influence any act or decision of a foreign official in his official capacity; (b) to induce such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; (c) to secure any improper advantage; or (d) to induce such a foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities.

The offer to pay, payment, promise to pay, or authorization of payment does not need to have been for all of these purposes. If the offer to pay, payment, promise to pay, or authorization of payment was for any of these purposes, or more than one, this element has been met.

7.  Seventh Element – Obtaining or Retaining Business

The seventh and final element is that the offer, promise, payment or authorization was made to assist the domestic concern—that is, either the defendant or Vitol, Inc.—in obtaining or retaining business for or with, or directing business to, any person or company. "Obtain business" has its normal meaning, that is, to get, to acquire, or to secure a person or company's business. "Retain business" also has its normal meaning, that is, to keep or continue to have a person or company's business.

It is not necessary that any person or company actually obtained or retained any business as a result of the unlawful offer, payment, promise, or gift.  Instead, it is only necessary that the individual who made the offer, promise, payment or authorization intended to assist the domestic concern in obtaining or retaining business for or with any person or company.

B.    Object #2: Territorial Prong – Elements and Definitions

The elements of a violation of the FCPA under the Territorial Prong are:

First, an individual was not a domestic concern;

Second, the individual acted corruptly and willfully;

Third, the individual, while physically in the territory of the United States, used the mails or any means or instrumentality of interstate commerce, or did any other act, in furtherance of the offense;

Fourth, the individual offered, paid, promised to pay, or authorized the payment of money or a gift or of anything of value;

Fifth, the offer, payment, promise to pay, or authorization of the payment of money or a gift or anything of value was either: (a) to a foreign official; or (b) to any other person or entity while the individual or any member of the alleged conspiracy knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official;

Sixth, the payment offered, given, promised or authorized was intended for any one of four purposes relevant to this action: (a) to influence any act or decision of a foreign official in his official capacity; (b) to induce such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; (c) to secure any improper advantage; or (d) to induce such a foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities; and

23

<u>Seventh</u>, the offer, payment, promise or authorization was made to assist the individual in obtaining or retaining business for or with, or directing business to, any person or company, such as the defendant, Vitol, Inc. or Vitol, S.A.

As you can see, many of the same elements that apply to a violation of the FCPA under the Domestic Concern Prong (the first object of the conspiracy) also apply to a violation under the Territorial Prong (the second object of the conspiracy). The main differences are that, under the second object: (a) the individual must have engaged in any act in furtherance of a corrupt payment, offer, promise, or authorization to pay while physically in the territory of the United States; and (b) there is no requirement that the individual made use of the mails or any means or instrumentality of interstate commerce.

1.      <u>First Element – Not a Domestic Concern</u>

The first element is that an individual was not a "domestic concern."  I have already defined the term "domestic concern," and you should apply that definition here.   The individual could still have been an officer, director, employee, or agent of a domestic concern, provided that he was not himself a domestic concern.

2.      <u>Second Element – "Corruptly" and "Willfully"</u>

The second element is that the individual acted corruptly and willfully.  I have already defined these terms and you are instructed to apply those definitions here.

3.      <u>Third Element – Act in Furtherance Within the Territory of the United States</u>

The third element is that the individual, while physically in the territory of the United States, made use of the mails or any means or instrumentality of interstate commerce, or did any other act, in furtherance of a corrupt payment or offer.  The territory of the United States includes the fifty states and the District of Columbia.   I explained earlier what it means to make use of the mails or any means or instrumentality of interstate commerce.   Bear in mind that unlike

24

the "domestic concern" object of the conspiracy, which requires that the individual made use of the mails or any means or instrumentality of interstate commerce, this object of the conspiracy does not require such proof.   Rather, it is sufficient that the individual, while in the territory of the United States, took any act (regardless of whether it involved the mails or any means or instrumentality of interstate commerce) in furtherance of a corrupt offer or payment.

4.     Fourth Element – Offer, Promise or Payment of Anything of Value

The fourth element is that the individual offered, paid, promised to pay, or authorized the payment of money or a gift or anything of value, as I have already defined. Such offer, payment, promise or authorization need not have occurred in the territory of the United States.

5.     Fifth Element – Foreign Official

The fifth element is that the offer to pay, payment, promise to pay, or authorization of payment was either to a foreign official, or to any other person or entity, while the individual knew that all or a portion of the payment or gift would be offered, given, or promised, directly or indirectly, to a foreign official.  I have already instructed you on this element previously and I direct you to apply my earlier instruction.

6.     Sixth Element – Purpose of Offer, Payment, Promise or Authorization

The sixth element is that the offer to pay, payment, promise to pay, or authorization of payment was for one or more of the four purposes I outlined previously.

7.     Seventh Element – Obtaining or Retaining Business

The seventh and final element is that the offer, promise, payment or authorization was made to assist the individual in obtaining or retaining business for or with, or directing business to, any person or company, such as the defendant, Vitol, Inc. or Vitol, S.A., as I have defined earlier.

As I said earlier, it is not necessary that any person or company actually obtained or retained any business, improper advantage, or influence with a foreign government whatsoever as a result of an unlawful offer, payment, or gift, only that the individual intended to assist in obtaining or retaining business for or with any person or company.

C.      Solicitation of Bribe Not a Defense

For purposes of the FCPA, it does not matter who first suggested that a corrupt offer, payment, promise or gift be made.  The FCPA prohibits any corrupt offer or payment or gift, if made for one the business purposes I described, regardless of who first suggested it.  It is not a defense if the offer or payment or gift was first suggested or requested by someone other than the defendant, or demanded on the part of a foreign official as a price for doing business or for some other benefit, or that the business may have been harmed if the payment or gift was not made. That the offer to pay, payment, promise to pay, or authorization of payment or gift may have been first suggested by someone else, including the recipient, is not an excuse if you find that the defendant decided to offer or make a corrupt payment, nor does it alter the corrupt purpose with which the offer to pay, payment, promise to pay, or authorization of payment or gift was made.[12]

*** 

I remind you that to carry its burden as to Count One, the government need not prove that the defendant actually violated the FCPA.  Rather, what the government must prove beyond a reasonable doubt is that the purpose of the conspiracy charged under Count One was to

---

[12]     See United States v. Kozeny, 582 F. Supp. 2d 535, 540 (S.D.N.Y. 2008); Government's Motions In Limine, ECF Dkt. No. 178, at 13-14; Government's Reply In Support of Motions In Limine, ECF Dkt. No. 182, at 3-4.

violate the FCPA, that the defendant knowingly and intentionally joined that conspiracy, and that

the defendant or a co-conspirator took at least one overt act in furtherance of the conspiracy.

Authority

Adapted from <u>Ng</u>, <u>Lambert</u>, <u>Hoskins</u>, and <u>Lambert</u>.

REQUEST NO. 6
(Count Two: Violation of the FCPA)

Count Two of the Indictment charges the defendant Javier Aguilar with violating

the FCPA under the Domestic Concern Prong.  Count Two reads:

> On or about [May 18, 2018], within the Southern District of Texas, the defendant JAVIER AGUILAR, together with others, being a domestic concern and an employee of a domestic concern, did willfully make use of, and aid, abet and willfully cause others to make use of, the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay and authorization of the payment of any money, offer, gift, promise to give and authorization of the giving of anything of value to a foreign official, to a foreign political party and official thereof, and to a person while knowing that all or a portion of such money and thing of value would be and had been offered, given and promised to a foreign official and to a foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official, foreign political party and official thereof in his, her or its official capacity; (ii) inducing such foreign official, foreign political party and official thereof to do and omit to do acts in violation of the lawful duty of such official and party; (iii) securing any improper advantage; and (iv) inducing such foreign official, foreign political party and official thereof to use his, her or its influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist AGUILAR, Vitol, [Inc.] and others in obtaining and retaining business for and with, and directing business to, Vitol, [Inc.] and others, as set forth below.
>
> Email sent by AGUILAR, via the First Aguilar 007 Account, from within the Southern District of Texas, replying to an email sent by Lionel Hanst, writing to Hanst, in Spanish, "That's correct... move ahead[.] But make payments for no more than 150k .... and do them every 15 days..... they need to be patient...."

I have already instructed you on the elements of a violation of the FCPA under the

Domestic Concern Prong in connection with the object of the conspiracy charged in Count One,

and you should apply those instructions here.  Remember that as I said with respect to Count One,

a conspiracy and the substantive crime are distinct and independent offenses.  The principal

difference is that Count Two charges the defendant with having actually violated the FCPA, as opposed to agreeing that he or a co-conspirator would do so.

A.    Additional Instruction: Aiding and Abetting

Count Two of the Indictment also charges the defendant with violating Title 18, United States Code, Section 2, the federal "aiding and abetting" statute. That is, in Count Two, the defendant is charged not only as a principal who committed the crime, but also as an aider and abettor and as a person who willfully caused the crimes. As a result, under this statute, there are two additional ways that the government may establish the defendant's guilt of Count Two. One way is called "aiding and abetting," and the other is called "willfully causing a crime." Let me explain each of these.

Aiding and abetting is defined under federal law in Title 18, United States Code, Section 2, which provides, in pertinent part, that:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Under the aiding and abetting statute, it is not necessary for the government to show that the defendant himself physically violated the FCPA in order for you to find the defendant guilty. A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find a defendant guilty of Count Two if you find beyond a reasonable doubt that the government has proven that another person actually committed the offense with which the defendant is charged, and that the defendant aided, abetted, counseled, commanded, induced or procured that person in the commission of the offense.

As you can see, the first requirement is that you find that another person has committed the crime charged. Obviously, no one can be convicted of aiding and abetting the

criminal acts of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant willfully and knowingly associate himself in some way with the crime, and that he participate in the crime by doing some act to help make the crime succeed.

To establish that the defendant participated in the commission of the crime, the government must prove that defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

Participation in a crime is willful if done voluntarily and intentionally, and with the specific intent to do something which the law forbids or with the specific intent to fail to do something the law requires to be done; that is to say, with a bad purpose either to disobey or to disregard the law.

Merely associating with others who were committing a crime is not sufficient to establish aiding and abetting. One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor. An aider and abettor must know that the crime is being committed and act in a way which is intended to bring about the success of the criminal venture.

To determine whether a defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

- Did he participate in the crime charged as something he wished to bring about?

- Did he knowingly associate himself with the criminal venture?

30

- Did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant is an aider and abettor, and therefore guilty of the offense. If, on the other hand, your answer to any one of these questions is "no," then the defendant is not an aider and abettor, and you may not find him guilty as an aider and abettor.

Another way of aiding and abetting a crime is by willfully causing a crime. Section 2(b) of the aiding and abetting statute reads as follows:

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

What does the term "willfully caused" mean? It does not mean that the defendant himself need have physically committed the crime or supervised or participated in the actual criminal conduct charged in the Indictment.

The meaning of the term "willfully caused" can be found in the answers to the following questions:

- Did the defendant intend for the crime to occur?

- Did the defendant intentionally cause another person to commit the crime?

If you are persuaded beyond a reasonable doubt that the answer to both of these questions is "yes," then the defendant is guilty of Count Two just as if he himself had actually committed it. If, on the other hand, your answer to any of those questions is "no," then you may not find him guilty as an aider and abettor.

<u>Authority</u>

Adapted from <u>Ng, Lap Seng</u>, and <u>Lambert</u>; Sand, Instructions 11-2 through 11-3 (aiding and abetting).

31

REQUEST NO. 7
(Count Three: Money Laundering Conspiracy)

Count Three of the Indictment charged the defendant Javier Aguilar with conspiracy to commit money laundering. It reads:

On or about and between March 1, 2015 and July 10, 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JAVIER AGUILAR, together with others, did knowingly and intentionally conspire to commit offenses under Title 18, United States Code, Section 1956, to wit:

(a) to transport, transmit and transfer monetary instruments and funds from one or more places in the United States to and through one or more places outside the United States, and to one or more places in the United States from and through one or more places outside the United States, with the intent to promote the carrying on of one or more specified unlawful activities, to wit: (i) felony violations of the FCPA, in violation of Title 15, United States Code, Sections 78dd-2 and 78dd-3; and (ii) one or more offenses against a foreign nation involving bribery of a public official, and the misappropriation, theft and embezzlement of public funds by and for the benefit of a public official, in violation of the Ecuadorian Penal Code and the Mexican Penal Code, as defined in Title 18, United States Code, Section 1956(c)(7)(B)(iv) (collectively the "Specified Unlawful Activities"), contrary to Title 18, United States Code, Section 1956(a)(2)(A); and

(b) to transport, transmit and transfer monetary instruments and funds from one or more places in the United States to and through one or more places outside the United States, and to one or more places in the United States from and through one or more places outside the United States, knowing that such monetary instruments and funds involved in the transportation, transmissions and transfers represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmissions and transfers were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of one or more of the Specified Unlawful Activities, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i).

A.    Elements of Conspiracy to Commit Money Laundering

To prove the crime of conspiracy to commit money laundering, the government must prove two elements beyond a reasonable doubt:

First, the existence of the conspiracy charged, that is, an agreement or understanding to violate a certain law of the United States; and

Second, that the defendant knowingly and willfully became a member of the conspiracy charged.

I instructed you regarding these two elements in my instructions for Count One. Those same instructions apply here.

As you heard me say a moment ago, there are only two elements of Count Three. For this conspiracy count, unlike the conspiracy charged in Count One, you need not find that an overt act was committed by anyone in furtherance of the conspiracy.[13]

B.    Objects of the Charged Conspiracy to Commit Money Laundering

The Indictment alleges two objects of the conspiracy charged in Count Three: (1) to transport, transmit or transfer money internationally with an intent to promote the carrying on of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(A); and (2) to transport, transmit or transfer money internationally knowing that the money represented proceeds from some form of unlawful activity and knowing that such transportation, transmission and transfer was designed, at least in part, to conceal and disguise the nature, location, source, ownership or control of the proceeds of one or more specified unlawful activities, in violation of 18 U.S.C. § 1956(a)(2)(B)(i).

---

[13]    See Whitfield v. United States, 543 U.S. 209, 219 ("conviction for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), does not require proof of an overt act in furtherance of the conspiracy").

33

Thus, the conspiracy charged in Count Three has two alleged objectives, that is, two ways in which the members conspired to commit money laundering.  The government need not prove that the defendant entered into an agreement to accomplish both the unlawful objectives alleged.  If you find unanimously that the defendant agreed to commit either of these objectives, then this element would be proved.

The defendant is not charged with any of the substantive money laundering crimes that are the objects of the conspiracy.  Remember that conspiracy, standing alone, is a separate crime, even if the conspiracy is not successful and even if you find that the defendant never actually committed the substantive crimes that were the object of the conspiracy.

<u>Authority</u>

Adapted from <u>Ng</u>, <u>Ho</u>, <u>Napout</u>, and <u>Lap Seng</u>; <u>see also</u> Sand, Instruction 19-2.

REQUEST NO. 8
(Count Three: Objects of the Money Laundering Conspiracy)

I will now explain the elements of the two objects of the conspiracy charged in Count Three.

As was the case for Count One, I will describe for you the elements of these unlawful acts so you can understand what the government must prove beyond a reasonable doubt was an objective of the conspiracy. You do not need to find that the defendant or any other person actually committed these unlawful acts.

Further, you should keep in mind that you need not find that the conspirators agreed to accomplish both objects or goals of the conspiracy charged in Count Three. Instead, an agreement to accomplish either of the two objects is sufficient. However, you must all agree on the specific object or objects the conspirators agreed to try to accomplish, and you may find that they agreed to try to accomplish both. If you find that two or more persons agreed to accomplish either of the two objects charged in Count Three, the illegal purpose element will be satisfied, regardless of whether or not that object was in fact accomplished—that is, regardless of whether that goal succeeded.

A.    Object #1 – Violation of the Money Laundering Statute – International Transfer to Promote Specified Unlawful Activity (§ 1956(a)(2)(A))

The first object of the money laundering conspiracy charged in Count Three of the Indictment is the transportation, transmission or transfer of funds or monetary instruments to or from the United States, with an intent to promote certain other crimes, known as specified unlawful activity. The relevant statute on this subject is Title 18, United States Code, Section 1956(a)(2)(A), which reads as follows:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a

35

place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity [shall be guilty of a crime].

The elements of a violation of this statute are as follows:

First, that an individual transported or transferred or transmitted, or attempted to transport or transfer or transmit, a monetary instrument or funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States; and

Second, that the individual did so with the intent to promote the carrying on of specified unlawful activity.

1.    First Element – Transportation of a Monetary Instrument or Funds To or From or Through the United States

The first element is that an individual transported or transferred or transmitted, or attempted to transport or transfer or transmit, a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States.

The term "monetary instrument" means coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, money orders, investment securities in bearer form or otherwise in such form that title thereto passes upon delivery, and negotiable instruments in bearer form or otherwise in such form that title thereto passes upon delivery. The term "funds" refers to money or negotiable paper which can be converted into currency. For this object of the conspiracy, it does not matter whether the monetary instrument or funds at issue was derived from criminal activity.[14]

---

[14]    See, e.g., United States v. Piervinanzi, 23 F.3d 670, 679 (2d Cir. 1994) (under § 1956(a)(2)(A), there is "no requirement" that "'proceeds' first be generated by unlawful activity, followed by a financial transaction with those proceeds"); United States v. $739,047.03 in U.S.

"Transported" or "transferred" or "transmitted" are not words that require a definition; they have their ordinary, everyday meaning.  The individual need not have physically carried funds or monetary instruments in order to prove that he is responsible for transferring or transporting or transmitting.  All that is required is that the individual caused the funds or monetary instrument to be transported or transferred or transmitted by another person or entity.

To satisfy this element, the funds or monetary instruments must have been transported, transferred or transmitted from somewhere in the United States to or through someplace outside the United States or to someplace in the United States from or through someplace outside the United States.  This element is satisfied where funds or monetary instruments were transported, transferred or transmitted into or out of United States-based accounts, even where the United States was not the country the funds or monetary instruments were originally coming from or ultimately headed to.[15]

### 2.    Second Element – Intent to Promote Specified Unlawful Activity

The second element is that the individual acted with intent to promote the carrying on of one or more crimes, referred to as a "specified unlawful activity" or "SUA."  I instruct you, as a matter of law, that for this object of the conspiracy charged in Count Three, the term "specified unlawful activity" includes: (i) violations of the FCPA; (ii) bribery of a public official, in violation

---

Currency, 103 F. App'x 245, 247 (9th Cir. 2004) ("Promotion of carrying on of bank fraud by attempting to transfer money to a location outside the United States, 18 U.S.C. § 1956(a)(2), does not require the funds in question to be proceeds of prior unlawful activity."); United States v. Dhafir, 2005 WL 8158837, at *1 (N.D.N.Y. Aug. 31, 2005) ("Under 1956(a)(2)(A), then, it is irrelevant whether the funds were derived from a legal or an illegal source provided that the Government proves that the defendant dealt with the funds in a manner intended to promote specified unlawful activity.").

[15]    See Ho, 984 F.3d at 203-07 (rejecting the defendant's argument that "the money laundering statute does not cover wire transfers where the United States is neither the point of origination nor the end destination for the money, but is instead just an intermediate stop along the way," and specifically where the defendant used "U.S.-based correspondent accounts").

37

of one or more of the laws of Ecuador; and (iii) bribery of a public official, in violation of one or more of the laws of Mexico.

Shortly, I will explain the elements of these specified unlawful activities. Keep in mind though, as I instructed you earlier with respect to the FCPA, the defendant does not need to be aware of the specific provision or provisions of the law that it was the object of the conspiracy to violate, or of any other specific provision, provided that he had knowledge that his conduct or the conduct of his co-conspirators intended to promote was, in a general sense, unlawful. You also need not find that these activities actually occurred, but merely that the defendant joined the conspiracy with the objective to promote, facilitate or assist them to occur.

a.    <u>First Specified Unlawful Activity – FCPA Violations With Respect to Ecuador or Mexico</u>

I have already explained to you the elements of the first specified unlawful activity: violating the FCPA. In determining whether there was a money laundering conspiracy with the intent to promote an FCPA violation, I instruct you to apply the same elements of the FCPA violation that I described in connection with the FCPA conspiracy charge in Count One.

Keep in mind, however, that—unlike Count One, which concerned only a conspiracy to bribe Ecuadorian officials—Count Three alleges a money laundering conspiracy to promote the bribery of Ecuadorian officials and to promote the bribery of Mexican officials. Thus, if you find beyond a reasonable doubt that the conspiracy had the object <u>either</u> of promoting an FCPA violation with respect to Ecuadorian officials <u>or</u> promoting an FCPA violation with respect to Mexican officials, then you should find that this element is satisfied.

Recall also that I provided you detailed instructions in connection with the fifth element of an FCPA violation on how to determine whether certain Ecuadorian individuals were "foreign officials" within the meaning of the FCPA. You should apply those same instructions in

38

determining whether the conspiracy in Count Three had the object of promoting an FCPA violation with respect to Ecuadorian officials.

Likewise, to determine whether the conspiracy had the object of promoting an FCPA violation with respect to Mexican officials, you will need to determine whether certain individuals were "foreign officials" within the meaning of the FCPA. The government contends that PEMEX and PEMEX Procurement International are instrumentalities of the government of Mexico. As I explained to you before, an "instrumentality" of a foreign government is an entity controlled by the government of a foreign country that performs a function that the government treats as its own. To determine whether PEMEX or PEMEX Procurement International were instrumentalities of the Mexican government, you should apply the instructions and consider the factors I described to you earlier in connection with how to determine whether Petroecuador is an instrumentality of the Ecuadorian government. If you find that PEMEX was an instrumentality of the government of Mexico, then you must find that any officer or employee of PEMEX, or anyone acting in an official capacity for or on behalf of PEMEX, even if not an officer or employee, was a "foreign official" under the FCPA. Likewise, if you find that PEMEX Procurement International was an instrumentality of the government of Mexico, then you must find that any officer or employee of PEMEX Procurement International, or anyone acting in an official capacity for or on behalf of PEMEX Procurement International, even if not an officer or employee, was a "foreign official" under the FCPA.

b.    Second Specified Unlawful Activity – Ecuadorian Bribery Law

The second specified unlawful activity involved in the money laundering conspiracy that the defendant is charged with are offenses against Ecuador. Specifically, the defendant is charged with conspiring to promote the bribery of a public official in violation of Ecuadorian law. I am now going to describe the Ecuadorian law of bribery, but keep in mind that

39

you do not need to find the defendant intended to promote the Ecuadorian law of bribery. It is sufficient if you find that he acted with an intent to promote any one of the alleged specified unlawful activities, namely, a violation of the FCPA in connection with either Ecuador bribery or Mexico bribery, or a violation of the Mexican law of bribery.

The crime of bribery under Article 280 of the applicable Ecuadorian Penal Code has five elements.

First, there must be either acceptance of an offer or promise of a bribe or receipt of a bribe by a public servant or a person who acts on behalf of a state power from another person. A bribe is defined broadly to include a donation, gift, promise, advantage, or undue economic benefit or other material good;

Second, the person to whom the bribe is offered or promised must be either a public servant or a person acting on behalf of a governmental institution. I instruct you as a matter of law that executives and senior managers of Petroecuador and officials at the Ecuadorian Ministry of Hydrocarbons are public servants for purposes of this element;

Third, the public servant must agree to receive or actually receive an improper economic benefit. The bribe need not be paid to satisfy this element. It is sufficient that the public servant has been promised and has agreed to accept something of value. Likewise, bribes received by third parties or intended to benefit third parties can also satisfy this element;

Fourth, the purpose of the payment must be to influence the way in which the public servant performs his or her job or function. Bribery includes not simply payments or promises of payments for committing or failing to commit acts, but also expediting, delaying or conditioning any matters relating to the public servant's functions; and

Fifth, there must be corrupt conduct; in other words, the bribe payer must have knowledge that he is paying, offering or promising non-owed renumeration that the public servant cannot rightfully accept.

### c. Third Specified Unlawful Activity – Mexican Bribery Law

The third specified unlawful activity involved in the money laundering conspiracy the defendant is charged with are offenses against Mexico.  Specifically, the defendant is charged with conspiring to promote the bribery of a public official in violation of Mexican law.  I am now going to describe the Mexican law of bribery, but again keep in mind that you do not need to find the defendant intended to promote the Mexican law of bribery; it is sufficient if you find that he acted with an intent to promote one of the other specified unlawful activities.

The crime of bribery under Article 222(II) of the Mexican Federal Criminal Code has two elements:

First, a person must give, promise or deliver any benefit to a public servant;

Second, the person's purpose in doing so must be that the public servant do or omit to do an act related to his functions, employment, position or commission.

The term "public servant" is defined to include any person who performs a job, position or commission of any nature in any majority state-owned company or an organization or entity assimilated to such a majority state-owned company.  I therefore instruct you as a matter of law that employees of PEMEX Procurement International are "public servants" for purposes of the foregoing elements if you determine that PEMEX Procurement International is a majority-state owned company or an organization or entity assimilated to a majority-state owned company.

### Authority

Adapted from Ng, Ho and Lap Seng; the signed expert declarations of Professor Keith S. Rosenn, Esq. and David Lopez, Esq. (filed as ECF Dkt. Nos. 207-1 and 207-2); see also Sand, Instructions 50A-11, 50A-12, 50A-13 and 50A-14.

B.    Object #2 – Violation of the Money Laundering Statute – Transportation of Monetary Instruments or Funds to Conceal or Disguise Proceeds (§ 1956(a)(2)(B)(i))

The second object of the money laundering conspiracy charged in Count Three of the Indictment is the knowing transportation of funds or monetary instruments to conceal or disguise the origin of the property.  The relevant statute on this subject is Title 18, United States Code, Section 1956(a)(2)(B)(i), which reads as follows:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity [shall be guilty of an offense].

The elements of a violation of this statute are as follows:

First, that the individual transported or transferred or transmitted, or attempted to transport or transfer or transmit, a monetary instrument or funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States.

Second, that the individual did so with the knowledge that the monetary instrument or funds involved represented the proceeds of some form of unlawful activity.

Third, that the individual did so with the knowledge that the transportation, transfer or transmission was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity.

1.      First Element – Transportation of a Monetary Instrument or Funds to or From or Through the United States

The first element is that the individual transported or transferred or transmitted, or attempted to transport or transfer or transmit, a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States.

I have previously defined this element for you in the context of the first charged object of the money laundering conspiracy, and I instruct you to apply that definition here.

2.      Second Element – Knowledge that the Property Involved Was the Proceeds of Unlawful Activity

The second element is that the individual knew that the property involved in the transportation, transmission or transfer was the proceeds of some form of unlawful activity.

To satisfy this element, the individual must have known that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under state, federal, or foreign law.  I instruct you as a matter of law that the violations of the FCPA and the Ecuadorian and Mexican laws previously described are felonies.  The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

The government does not have to prove that the conspirators specifically knew that the property involved in the transportation, transmission or transfer represented the proceeds of any specific offense.  Nor does the government have to prove that the conspirators knew the property involved in the offense in fact was the proceeds of specified unlawful activity, including the violations of the FCPA and the Ecuadorian and Mexican laws previously described.  Rather, if

43

the government proves that the individuals agreed to transport, transmit or transfer property they knew to be the proceeds of some illegal activity that was a felony, this element is satisfied.

Keep in mind that it is not necessary for all conspirators to believe that the proceeds came from the same unlawful activity; it is sufficient that each potential conspirator believed that the proceeds came from some unlawful activity.[16]

3.   Third Element – Knowledge of the Unlawful Purpose of the Transfer

The third element is that the individual transported, transferred or transmitted the monetary instruments or funds with knowledge that the transportation, transfer or transmission was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

Proof only that the funds were concealed is not sufficient to satisfy this element. Instead, the purpose of the transportation, transfer, or transmission needs to have been to conceal or disguise the nature, location, source, ownership, or control of the proceeds and the individual must have known that this was the purpose.[17]

Authority

Adapted from Ng, and the jury charge of the Hon. Raymond J. Dearie in United States v. Vitaly Korchevsky, et al., 15-CR-381 (E.D.N.Y. 2018); see also Sand, Instructions 50A-16, 50A-17, 50A-18 and 50A-19.

---

[16]   See United States v. Stavroulakis, 952 F.2d 686, 689 (2d Cir. 1992), cert. denied, 504 U.S. 926 (1992) (money laundering conspiracy even though one conspirator believes proceeds are from narcotics trafficking, and other believes they are from illegal gambling).

[17]   See United States v. Huezo, 546 F.3d 174, 178-79 (2d Cir. 2008).

44

REQUEST NO. 9
(Conscious Avoidance)

As I explained, for purposes of Counts One and Count Three, the government is required to prove that the defendant knowingly and intentionally became a member of the conspiracy, and that the object of the conspiracy in Count One was to violate the FCPA and in Count Three to commit money laundering. In determining whether the defendant acted knowingly with respect to the object or objects of the conspiracy, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him.

If you find beyond a reasonable doubt that the defendant was aware that there was a high probability that his co-conspirators' objective was to violate the law as charged in Counts One and Three, but that the defendant deliberately avoided confirming this fact, you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge of the object of the charged conspiracy. However, if you find that the defendant actually believed that he or his co-conspirators were acting with a lawful purpose with regard to any of the charged counts, he may not be convicted of that count.

Moreover, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish, or mistaken. There is a difference between knowingly participating in the conspiracy and knowing the objects of the conspiracy. "Conscious avoidance" or "willful blindness" as I have described it cannot be used as a basis for finding that the defendant knowingly joined the conspiracy. It is logically impossible for a defendant to join the conspiracy unless he or she knows the fact that the conspiracy exists.

However, if you find beyond a reasonable doubt that the defendant chose to participate in a joint undertaking, you may consider whether the defendant deliberately avoided

45

confirming an otherwise obvious fact: that the purpose of the partnership he joined was to violate the law.

Authority

Adapted from <u>Ng</u>, <u>Lap Seng</u>, and the jury charge of the Hon. Kiyo A. Matsumoto in <u>United States v. Evan Greebel</u>, 15-CR-637 (E.D.N.Y. 2017); Sand, Instruction 3A-2. <u>See</u> <u>id</u>. cmt. ("Instruction 3A-2 is appropriate when a defendant has claimed a . . . lack of knowledge as to the unlawful aims of a conspiracy, but the evidence suggests deliberate ignorance.").

"A conscious-avoidance charge is appropriate when (a) the element of knowledge is in dispute, and (b) the evidence would permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." <u>United States v. Hopkins</u>, 53 F.3d 533, 542 (2d Cir. 1995) (citations and quotation marks omitted). "[W]here the defendant asserts a lack of actual knowledge, the Government need not choose between an actual knowledge and a conscious avoidance theory because ordinarily the same evidentiary facts that support the government's theory of actual knowledge also raise the inference that he was subjectively aware of a high probability of the existence of illegal conduct and thus properly serve as the factual predicate for the conscious avoidance charge." <u>United States v. Lange</u>, 834 F.3d 58, 78 (2d Cir. 2016) (quotation marks omitted).

The Second Circuit has cautioned that "the prosecutor should request that the 'high probability' and 'actual belief' language be incorporated into every conscious avoidance charge." <u>United States v. Feroz</u>, 848 F.2d 359, 360 (2d Cir. 1988) (per curiam) ("[K]nowledge of the existence of a particular fact is established (1) if a person is aware of a high probability of its existence, (2) unless he actually believes that it does not exist."). Second Circuit precedents also "establish that the doctrine [of conscious avoidance] may be invoked to prove defendant had knowledge of the unlawful conspiracy. But we do not permit the doctrine to be used to prove intent to participate in a conspiracy. The reason for this distinction is that common sense teaches it is logically impossible to intend and agree to join a conspiracy if a defendant does not know of its existence. Yet once defendant's participation in a conspiracy has been proved, conscious avoidance may properly be used to prove his knowledge of its unlawful objectives." <u>United States v. Reyes</u>, 302 F.3d 48, 54-55 (2d Cir. 2002).

46

REQUEST NO. 10
(Lawfulness or Benefits of Acts or Goals No Defense)

With respect to all counts, it is not a defense that, had there been no offer or giving of a corrupt payment or offer of payment, the alleged Ecuadorian officials or Mexican officials might have performed the same act or acts.  Nor is it a defense that the actions taken by the Ecuadorian officials or the Mexican officials, or the acts that the defendant intended them to take, may have been desirable or beneficial to the public or to any particular country, or would not have harmed the public, or any particular country.  It is also not a defense that the actions taken by the alleged Ecuadorian officials or Mexican officials as a result in whole or in part of the alleged bribes may have been only one step in an otherwise lawful or proper process.

The laws in this case are not concerned with the results of an offer or giving of corrupt payments, but rather that such offers and payments not be made.

Authority

Adapted from Ng and Ho; see United States v. Alfisi, 308 F.3d 144, 151 (2d Cir. 2003) (an official acts "corruptly" even where the official's actions were legally correct and benefitted the public) (citing United States v. Manton, 107 F.2d 834, 845 (2d Cir. 1939)); see also City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 378 (1991) ("A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid."); United States v. Orenuga, 430 F.3d 1158, 1165 (D.C. Cir. 2005) (proper to charge jury that "[i]t is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act" (quotation marks omitted)); United States v. Quinn, 359 F.3d 666, 675 (4th Cir. 2004) ("[I]t does not matter whether the government official would have to change his or her conduct to satisfy the payor's expectations."); United States v. Jannotti, 673 F.2d 578, 601 (3d Cir. 1982) ("it is neither material nor a defense to bribery that had there been no bribe, the [public official] might, on the available data, lawfully and properly have made the very recommendation that [the briber] wanted him to make" (quotation marks omitted)).

REQUEST NO. 11
(Proof of Motive Not Necessary)

Proof of motive is not a necessary element of any of the crimes with which the defendant is charged.  Proof of motive does not establish guilt, nor does the lack of proof of motive establish that the defendant is not guilty.  If all the elements of a crime are proven beyond a reasonable doubt, it is immaterial what a defendant's motive for the crime may be, or whether the defendant's motive was shown at all. The presence or absence of motive is, however, a circumstance which you may consider as bearing on the intent of the defendant.

Authority

Adapted from Sand, Instruction No. 6-18 & commentary.  See also Ng, and the jury charge of the Hon. Allyne R. Ross in United States v. Ramsey, 21-CR-495 (E.D.N.Y.).

REQUEST NO. 12
(Venue)

The Indictment alleges that the crimes charged in Counts One and Three occurred in part in this judicial district, the Eastern District of New York. You must determine whether the crimes charged in Counts One and Three did in fact occur in part in this district. This concept is known as "venue."

The Eastern District of New York includes the counties of Kings (also known as Brooklyn), Queens, Richmond (also known as Staten Island), Nassau, and Suffolk. It also includes the waters within New York and Bronx Counties, which include the waters surrounding the island of Manhattan that separate Manhattan from Brooklyn, Queens, and the other boroughs of New York City and from the State of New Jersey, as well as the air space above the district.[18]

A defendant need not himself have ever been physically present in a district for there to be venue.[19] Instead, to establish venue for Count One and Count Three, the government must prove that some act in furtherance of the conspiracies charged in those counts took place in the Eastern District of New York. This means that even if other acts were committed outside this district or if the crime was begun or completed elsewhere, there is venue in the Eastern District of New York so long as some act in furtherance of the relevant conspiracy took place in this district. The act need not be an unlawful act; it can be any act, innocent or illegal, as long as it is done in

---

[18]    See 28 U.S.C. § 112(c); see also United States v. Kirk Tang Yuk, 885 F.3d 57, 71 (2d Cir. 2018) (finding the evidence of travel over the concurrent waters "undoubtedly sufficient" to support venue); United States v. Rutigliano, 790 F.3d 389 (2d Cir. 2015) (venue proper where wire in furtherance of scheme traveled through or over waters of Eastern District of New York, which are statutorily defined to be "also be part" of the Southern District).

[19]    United States v. Rommy, 506 F.3d 108, 120 (2d Cir. 2007) ("a defendant need not himself have ever been physically present in a district for a conspiracy charge against him to be venued there").

49

furtherance of the object or purpose of the conspiracy.[20] The act does not need to be taken by the defendant; instead, it may be an act taken by a co-conspirator or an act that the defendant or co-conspirators caused others to take—even innocent third parties who are not members of the conspiracy—to further the ends of the conspiracy, so long as it was reasonably foreseeable to the defendant that such an act would occur in the Eastern District of New York.[21]

In determining whether some act in furtherance of the conspiracy you are considering occurred in the Eastern District of New York, you may consider a number of things. Venue can be conferred based on physical presence or conduct. Passing through a district, including through or over waters, is sufficient to confer venue. Venue can also be properly based on electronic impulses, including email communications and electronic transfers of funds such as banking transfers, passing through a district.[22] Venue lies in any district where electronic

---

[20] United States v. Kim, 246 F.3d 186, 193 n.5 (2d Cir. 2001) ("[i]n a conspiracy prosecution, 'venue is proper in any district in which an overt act ... was committed by any of the coconspirators'" (quotation marks omitted)); United States v. Svoboda, 347 F.3d 471, 483 (2d Cir. 2003) ("[V]enue is proper in any district in which an overt act in furtherance of [a] conspiracy was committed by any of the coconspirators"); see also United States v. Lange, 834 F.3d 58, 70 (2d Cir. 2016) ("The act need not be unlawful; it can be any act, innocent or illegal, as long as it is done in furtherance of the object or purpose of the conspiracy."); Yates v. United States, 354 U.S. 298, 334 (1957) (an overt act need not "be criminal in character").

[21] United States v. Naranjo, 14 F.3d 145, 147 (2d Cir. 1994); United States v. Royer, 549 F.3d 886, 896 (2d Cir. 2008); see also United States v. Abdullaev, 761 F. App'x 78, 84 (2d Cir. 2019) (Summary Order) ("We have repeatedly found venue proper where an out-of-district defendant causes an overt act to be committed by an innocent third party within the district of venue.") (collecting authorities); Lange, 834 F.3d at 70 (venue proper based on "not just acts by co-conspirators, but also acts that the conspirators caused others to take" within the district). In accordance with controlling precedent, the government requests that the jury be instructed that venue must be foreseeable, but the government preserves an objection to that requirement. See United States v. Kirk Tang Yuk, 885 F.3d 57, 70 n.2 (2d Cir. 2018) (noting that "other circuits have not adopted such a requirement").

[22] Rutigliano, 790 F.3d at 397 ("[V]enue lies where a wire in furtherance of a scheme begins its course, continues or ends.").

communications are sent or received[23] and any district through which electronic communications are routed.[24] Venue is also proper where a telephonic communication in furtherance of a crime was made or where it was received.[25] The government need not prove all of these bases of venue; any one is sufficient.

Unlike the elements I just explained to you that the government must prove beyond a reasonable doubt, a standard that I have already explained to you, venue—and only venue—need only be proved by the lesser standard of "preponderance of the evidence." To prove something by a preponderance of the evidence means simply to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence, both direct and circumstantial.

If you find that the government has failed to prove by a preponderance of the evidence that any act in furtherance of either Count One or Count Three occurred within this district, you must find the defendant not guilty on that count.

Finally, you need not consider venue with respect to Count Two, which charges that the crime occurred in the Southern District of Texas, which includes Harris County and the

---

[23]    Lange, 834 F.3d at 70; Kim, 246 F.3d at 192-93; United States v. Royer, 549 F.3d 886, 895 (2d Cir. 2008); United States v. Teman, 465 F. Supp. 3d 277, 314 (S.D.N.Y. 2020); United States v. Kenner, 2019 WL 6498699, at *9 (E.D.N.Y. Dec. 3, 2019); United States v. Kubitshuk, 2017 WL 3531553, at *4 (S.D.N.Y. Aug. 17, 2017).

[24]    United States v. Mackey, 652 F. Supp. 3d 309, 326 (E.D.N.Y. 2023) ("Venue is also proper in any district through which electronic communications in furtherance of the conspiracy pass."); United States v. Brown, 293 F. App'x 826, 829 (2d Cir. 2008); United States v. Peterson, 357 F. Supp. 2d 748, 752 (S.D.N.Y. 2005); United States v. Ohle, 441 F. App'x 798, 802 (2d Cir. 2011); United States v. Goldberg, 830 F.2d 459, 465 (3d Cir. 1987)).

[25]    See Lange, 834 F.3d at 70; United States v. Abdallah, 528 F. App'x 79, 83 (2d Cir. 2013); United States v. Christo, 413 F. App'x 375, 376 (2d Cir. 2011); Rommy, 506 F.3d 108, 120 (2d Cir. 2007); Naranjo, 14 F.3d at 147 ("'phone calls alone' [can] establish[] venue" (quoting United States v. Friedman, 998 F.2d 53 (2d Cir.1993)); United States v. Gilboe, 684 F.2d 235, 239 (2d Cir. 1982); Kenner, 2019 WL 6498699, at *5.

51

greater Houston, Texas area.  I instruct you that you should regard venue as to Count Two as proven.

Authority

Adapted from the jury charges in <u>Ng</u>, <u>Ho</u> and <u>Napout</u>.

REQUEST NO. 13
(Co-Conspirator Statements and Liability)

The charges against the defendant allege that he participated in a conspiracy.  In that regard, I admitted into evidence against the defendant the acts and statements of others because these acts and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendant on trial.

The reason for allowing this evidence to be received against the defendant has to do with the nature of the crime of conspiracy.  A conspiracy is often referred to as a partnership in crime.  Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.

Thus, if you find that the defendant was a member of a criminal conspiracy charged, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy, may be considered against the defendant.  This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

Before you may consider the statements or acts of a co-conspirator in deciding the issue of the defendant's guilt, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme.  If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy, or

53

if they were not done or said in furtherance of that conspiracy, they may not be considered by you as evidence against the defendant as to that conspiracy.

<u>Authority</u>

Adapted from <u>Rivera</u>, and the jury charges of the Hon. Sterling Johnson, Jr. in <u>United States v. Scalisi</u>, 10-CR-46 (E.D.N.Y.), and of the Hon. Kiyo A. Matsumoto in <u>United States v. Barret</u>, 10-CR-806 (E.D.N.Y).

REQUEST NO. 14
(Other Persons Not on Trial)

In addition to the evidence about the involvement of cooperating accomplices who testified at trial, you have also heard evidence about the involvement of certain other people in the crimes charged in the Indictment.  You may not draw any inference, favorable or unfavorable, towards the government or the defendant from the fact that certain persons are not on trial before you.  That these other individuals are not on trial before you is not your concern.  You should neither speculate as to the reason these other people are not on trial before you, nor allow their absence to influence in any way your deliberations in this case.  Nor should you draw any inference from the fact that any other person is not present at this trial.

Your concern is solely the defendant on trial before you.  The possible guilt of others is no defense to a criminal charge.  You must only consider whether government has proven this defendant guilty.  The fact that other individuals are not on trial before you should not control or influence in any way your verdict with reference to the defendant.

Authority

Adapted from Ng and Napout, and the jury charge of the Hon. Eric N. Vitaliano in United States v. Servider, 15-CR-174 (E.D.N.Y. 2018) (hereinafter "Servider"); see also Sand, Instruction 2-18 (citing the Sixth Circuit Pattern Criminal Jury Instruction 2.01).

REQUEST NO. 15
(Accomplice Testimony)

You have heard from witnesses who testified that they were actually involved in planning and carrying out the crimes charged in the Indictment.  There has been a great deal said about these so-called cooperating witnesses in the summations of counsel and whether or not you should believe them.  The government argues, as it is permitted to do, that it must take the witnesses as it finds them.  It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.  For those very reasons, the law allows the use of such testimony.  Indeed, it is the law in federal courts that the testimony of accomplices may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, because of the interest a cooperating witness may have in testifying, the testimony should be scrutinized with special care and caution.  The fact that the witness may benefit from his cooperation may be considered by you as bearing upon his credibility.

I have given you some general considerations on credibility and I will not repeat them all here.  Nor will I repeat all of the arguments made on both sides.  However, let me say a few things that you may want to consider during your deliberations on the subject of cooperating witnesses.  You should ask yourselves whether the witness would benefit more by lying, or by telling the truth.  Was the witness' testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely?  Or did he believe that his interest would be best served by testifying truthfully?  If you believe that that witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie or was it one that would cause him to tell the truth?  Did this motivation color the witness' testimony?

You have heard testimony from government witnesses who pleaded guilty to charges arising out of the same facts as this case.  You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendant on trial from the fact that prosecution witnesses pled guilty to similar charges.  That witnesses' decisions to plead guilty were personal decisions about their own guilt.  They may not be used by you in any way as evidence against or unfavorable to the defendant on trial here.

In addition, you have heard testimony from certain witnesses who testified pursuant to a cooperation agreement with the government in which the witnesses agreed to testify and the government promised not to prosecute the witnesses in a federal court for certain criminal conduct.  The government is allowed to enter into these agreements, and it is not your concern why the government made an agreement with a particular witness or whether you approve or disapprove of the government's tactics.  You may, however, consider the effect, if any, that the existence or terms of the agreement may have on the witness's credibility.

For example, you heard testimony that the government has also promised to bring the witness's cooperation to the attention of the sentencing Court.  When someone cooperates with the government, the government does not determine what sentence they are going to get.  Nor does the government typically make a recommendation to the sentencing judge as to how much time they are going to get.  What the government will do, if it is satisfied with the level of cooperation, is write to the sentencing judge what is known as a 5K letter.  The 5K letter sets forth the cooperating witness' criminal acts as well as the substantial assistance the witness has provided.  I instruct you that the 5K letter does not guarantee the cooperating witness a lower sentence.  This is because the sentencing Court may, but is not required, to take the 5K letter into account when imposing sentence on the cooperating witness.  The Court has discretion, whether or not a 5K letter is written, to impose any reasonable sentence the Court deems appropriate up to the statutory

57

maximum.  The final determination as to the sentence to be imposed rests with the Court, not with

the government.

In sum, you should look at all the evidence in deciding what credence and what

weight you give the cooperating witness.

<u>Authority</u>

Adapted from <u>Ng</u>, <u>Napout</u>, <u>Servider</u>, the jury charges of the Hon. William F. Kuntz, II, <u>United States v. Pagett</u>, 17-CR-306 (E.D.N.Y. 2019) (hereinafter, "<u>Pagett</u>"), and of the Hon. Brian M. Cogan in <u>United States v. Joaquin Archivaldo Guzman Loera</u>, 09-CR-466 (S-4) (E.D.N.Y. 2019); Sand, Instructions 7-5, 7-10, 7-11.

REQUEST NO. 16
(Testimony of Defendant (if applicable))

In a criminal case, a defendant cannot be required to testify, but, if he chooses to testify, he is, of course, permitted to take the witness stand on his own behalf. In this case, the defendant decided to testify. You should examine and evaluate the testimony of the defendant just as you would the testimony of any witness.

Authority

Adapted from the jury charges in Rivera; Sand, Instruction 7-4; see United States v. Solano, 966 F.3d 184, 194-95 (2d Cir. 2020) ("'district courts should not instruct juries to the effect that a testifying defendant has a deep personal interest in the case. Rather, a witness's interest in the outcome of the case ought to be addressed in the court's general charge concerning witness credibility. If the defendant has testified, that charge can easily be modified to tell the jury to evaluate the defendant's testimony in the same way it judges the testimony of other witnesses.'") (quoting United States v. Gaines, 457 F.3d 238, 249 (2d Cir. 2006)).

REQUEST NO. 17
(Expert Witnesses)

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, his or her reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

Authority

Adapted from Ng, Shkreli, Servider, and Rivera; Sand, Instruction 7-21.

REQUEST NO. 18
(Preparation of Witnesses)

There was testimony at trial that the attorneys for the government interviewed witnesses when preparing for and during the course of the trial.  There is nothing inappropriate about such meetings and you must not draw any unfavorable inference from that fact.

On the contrary, attorneys have an obligation to prepare their case as thoroughly as possible and, in the discharge of that responsibility, to interview witnesses.  Such consultation helps conserve your time and the Court's time.

Authority

Adapted from Ng, Ho, and Servider; see also the jury charge of the Hon. Richard J. Sullivan in United States v. Peirce, 06-CR-1032 (S.D.N.Y. 2008).

REQUEST NO. 19

(Use of Evidence Obtained Pursuant to Searches and Seizures (if applicable))

You have heard testimony about evidence seized in connection with certain searches or seizures conducted by law enforcement officers, and in particular, of email and other electronic evidence obtained pursuant to court-approved search warrants.  Evidence obtained from these searches and seizures was properly admitted in this case, and may be properly considered by you.  Such searches and seizures were entirely appropriate law enforcement actions.

Whether you approve or disapprove of how evidence was obtained should not enter into your deliberations, because I instruct you that the government's use of the evidence is entirely lawful.

You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the government has proven the defendant's guilt beyond a reasonable doubt.

Authority

Adapted from the jury charge of the Hon. Katherine B. Forrest in United States v. Levin, 15-CR-101 (S.D.N.Y. 2016); see United States v. Alimehmeti, 284 F. Supp. 3d 477, 492 (S.D.N.Y. 2018) ("whether evidence has been lawfully obtained" is not a "fit subject[] for the jury's consideration").

REQUEST NO. 20
(Audio Recordings, Transcripts, and Translations)

The government has offered evidence in the form of audio recordings.  Some of those were obtained without the knowledge of some or all of the parties to these communications, but were lawfully obtained.  Whether you approve or disapprove of the recording or interception of those conversations may not enter your deliberations.  I instruct you that these recordings were made in a lawful manner, that no one's rights were violated, that the government's use of this evidence is entirely lawful, and that it was properly admitted into evidence at this trial.

With respect to these recordings, the government has offered evidence in the form of translated transcripts of the recordings.  The translated portions of the transcripts are evidence for you to consider so that you can understand the recordings.   You should consider these translations like any other evidence in this case.

In addition, you heard testimony that, in addition to the recorded conversations that were received in evidence, there were other conversations that were recorded by not presented at trial.  You also heard testimony that some of the recorded conversations received in evidence were only excerpts of the entirely consensually recorded conversation.  You are not to speculate in any way as to any recordings not introduced into evidence.  The parties are under no obligation to present all the evidence that may exist and I instruct you that whether any particular recording or part of it is admissible is a question of law to be decided only by the Court.  You may not speculate or draw any inferenced from the fact that you did not hear other recorded conversations.  You must consider only those recordings received in evidence and determine what weight, if any, to give them.

Authority

Adapted from Ng, Napout, Servider, and the charge of the Hon. Eric N. Vitaliano in United States v. Brack, 18-CR-684 (E.D.N.Y. 2020) (hereinafter, "Brack"); see United States

63

v. Bahadar, 954 F.2d 821, 830 (2d Cir. 1992) (approving similar instruction with respect to translations of foreign-language recordings); United States v. Marin, 513 F.2d 974, 977 (2d Cir. 1975) (allowing Spanish-to-English transcripts into the jury room); United States v. Carrera, No. 98-CR-878 (JG), 1998 WL 903467, at *2 (E.D.N.Y. Dec. 21, 1998); see also Sand, Instruction 5-10.

## REQUEST NO. 21
### (English-Language Translations)

The government has also presented evidence in the form of English-language translations of foreign-language documents and communications.  The translations are evidence for you to consider so that you can understand this evidence.  You should consider these translations like any other evidence in this case.

### Authority

Adapted from Napout; see also Bahadar, 954 F.2d at 830-31.

REQUEST NO. 22
(Consciousness of Guilt (if applicable))

You have heard testimony that the defendant made certain statements outside the courtroom to law enforcement authorities in which the defendant claims that his conduct was consistent with innocence and not with guilt.  The government claims that these statements in which he exonerated or exculpated himself are false.

If you find that the defendant gave a false statement in order to divert suspicion from himself, you may, but are not required to infer that the defendant believed that he was guilty. You may not, however, infer on the basis of this alone that the defendant is, in fact, guilty of the crimes for which he is charged.

Whether evidence as to a defendant's statements shows that the defendant believed that he was guilty, and the significant, if any, to be attached to any such evidence, are matters for you, the jury, to decide.

Authority

Adapted from Brack, and the charge of the Hon. Eric N. Vitaliano in United States v. Bayfield, 14-CR-356, 2017 WL 835681 (E.D.N.Y. Feb. 3, 2017); Sand, Instruction 6-11.

REQUEST NO. 23

(Uncharged Acts Considered for a Limited Purpose (if applicable))

You have heard evidence that the defendant engaged in conduct other than the crimes charged in the indictment.  The defendant is not on trial for committing any acts not charged in the indictment or for acts committed outside the time periods charged in each count of the indictment.  Consequently, you may not consider evidence of those other acts as a substitute for evidence that the defendant committed the crimes charged in this case.  Nor may you consider evidence of those other acts as proof that the defendant has a criminal propensity; that is, you may not conclude that he likely committed the crimes charged in the indictment because he was predisposed to criminal conduct.

Instead, you may consider evidence of uncharged conduct by the defendant for limited purposes, and you may consider it only for the following limited purposes, which I will now describe.  You may only consider evidence of uncharged conduct:

- As evidence of conduct that is inextricably intertwined with evidence of the charged crimes;

- As evidence enabling you to understand the complete story of the charged crimes; and

- As evidence corroborating the testimony of other government witnesses.

Evidence of uncharged conduct by the defendant may not be considered by you for any purpose other than the ones I have just listed.

Authority

Adapted from Brack and Rivera.

67

REQUEST NO. 24
(No Duty To Call Witnesses or Produce All Available Evidence)

A party is not required to call a particular witness or offer any specific item or types of evidence. You may have heard argument about types of evidence that were not introduced in this case. While the defense is permitted to argue that there is a lack of certain evidence, you should not speculate on whether such evidence exists or what such evidence might have shown.

Relatedly, although the government bears the burden of proof, the law does not require the government to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the issues in this case. Nor does the law require the government to produce as exhibits all things mentioned during the course of the trial. Again, your concern is to determine whether or not, based on the evidence presented, the defendant's guilt has been proved beyond a reasonable doubt.

Authority

Adapted from the jury charges in Ng, Shkreli, and Rivera; Sand, Instruction 4-4.

REQUEST NO. 25
(No Duty to Use Particular Investigative Techniques)

There is no legal requirement that the government use any specific investigative techniques to prove its case. The government is not on trial in this case and law enforcement techniques are not your concern. Your concern is to determine whether or not, based upon all of the evidence in this case, the government has proven that the defendant is guilty beyond a reasonable doubt as to each count charged in the Indictment.

Authority

Adapted from the jury charges in Ng, Shkreli, and Rivera; Sand, Instruction 4-4; United States v. Saldarriaga, 204 F.3d 50, 52 (2d Cir. 2000) (per curiam); United States v. Knox, 687 F. App'x. 51, 54-55 (2d Cir. Apr. 14, 2017) (summary order).

<u>REQUEST NO. 26</u>
(Uncalled Witnesses Equally Available (if applicable))

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify.  I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.  The burden of proof to prove the charges beyond a reasonable doubt remains with the government at all times.

<u>Authority</u>

Adapted <u>Ng</u>, <u>Lange</u>, and <u>Pagett</u>; Sand, Instruction 6-7.

REQUEST NO. 27
(Summary Evidence (if applicable))

Some exhibits were admitted into evidence in the form of charts, summaries and compilations. Those charts, summaries and compilations were admitted in place of and, at times, along with the underlying documents that they represent in order to save the time and inconvenience of reviewing voluminous records. You should consider these items as you would any other evidence.

Authority

Adapted from Pagett, Servider, and the jury charge of the Hon. Brian M. Cogan in United States v. Nadeem, 13-CR-424 (E.D.N.Y. 2015); see also United States v. Parnas., 19-CR-725 (S-3) (JPO), 2022 WL 669869, at *8 (S.D.N.Y. Mar. 7, 2022); Sand, Instruction 5-12; Fed. R. Evid. 1006.

REQUEST NO. 28
(Redactions (if applicable))

Among the exhibits received in evidence, there are some documents that are redacted.  "Redacted" means that part of the document was taken out.  You are to concern yourself only with the part of the document that has been admitted into evidence.  You should not consider any possible reason why the other part of it has been redacted.

Authority

Adapted from Ng, and the jury charge of the Hon. Kimba M. Wood, United States v. Cespedes-Pena, 14-CR-520 (S.D.N.Y. 2015).

CONCLUSION

The government respectfully requests that the Court include the foregoing in its instructions to the jury.  In addition, the government requests the opportunity to submit further instructions or amend those submitted as appropriate.

Dated:     Brooklyn, New York
           December 26, 2023

                                                    Respectfully submitted,

                                                    BREON PEACE
                                                    United States Attorney

                              By:         /s/
                                          _____
                                          Jonathan P. Lax
                                          Matthew R. Galeotti
                                          Assistant U.S. Attorneys

                                          GLENN S. LEON
                                          Chief, Fraud Section
                                          Criminal Division, U.S. Dept. of Justice

                              By:         /s/
                                          _____
                                          Derek J. Ettinger
                                          Assistant Chief, FCPA Unit
                                          Clayton P. Solomon
                                          Trial Attorney, FCPA Unit

                                          MARGARET A. MOESER
                                          Acting Chief, Money Laundering & Asset
                                            Recovery Section
                                          Criminal Division, U.S. Dept. of Justice

                              By:         /s/
                                          _____
                                          D. Hunter Smith
                                          Trial Attorney, International Unit

Enclosures